25-1698 Brian Menge v. Khursheed Ash-Shafii. Oral argument not to exceed 15 minutes per side. Mr. Pertusek for the defendant appellate. Good morning, Your Honor. Nathan Pertusek on behalf of Appellant Khursheed Ash-Shafii. I would like to reserve three minutes for rebuttal. Very well. We are here today asking this court to reverse the district court's denial of immunity as it relates to Appellee's First Amendment retaliation claim. The issues that are presented here are two narrow issues. One is legislative immunity and the other is qualified immunity. And they relate to two comments that were made. The first comment was made by Khursheed Ash-Shafii as a councilman at a city council meeting on April 3, 2023 during the council affairs portion of the meeting, during which he accused a former police officer of the City of Highland Park of stealing forfeiture funds. The second comment at issue in this case is a Facebook comment that was left by Khursheed Ash-Shafii from his personal Facebook page on a concerned resident's Facebook page that essentially accused Mr. Menge, the appellee, of having been fired by the City of Highland Park. Did anyone move for summary judgment on the Facebook-based claim? It was included in the briefing, yes. And the district court granted summary judgment as to the Facebook as it relates to a legislative immunity for defamation. But not with respect to First Amendment retaliation, am I right? It did not speak to it directly as to the issue of First Amendment retaliation, but it was included in the briefing. Just housekeeping, you didn't argue legislative immunity, though, in the district court, correct? We did. Sorry, Your Honor. We broadly argued legislative immunity. And the issue here is that it was incongruous to be granted legislative immunity under state law, but did not be granted legislative immunity under federal law for essentially the exact same conduct. Right, so you did not make the federal legislative immunity argument, am I right? I believe we did, Your Honor. I believe we did. You argued Michigan state law, absolute legislative immunity using state law cases, but did not argue the concomitant kind of federal common law-based legislative immunity in the context of your 1983 claim. You have pressed that on appeal, but I think the answer to Judge Kessler's question is no, you are not citing these same cases you cite now before the district court. I would agree with that, Your Honor. My recollection is, and it may be flawed, and I'm not going to disagree with the district court, was that this did come up at oral argument, but again, I'm not going to disagree with the district court on that point. But obviously, we're talking about federal legislative immunity today. As it relates to the comments that were made at the city council meeting, this court has been clear that the federal legislative immunity under Section 1983 is essentially the same as under the speech and debate clause of the Constitution. It's clearly established under those line of cases that comments that are made from the floor, which essentially is what was occurring in this case, are protected by legislative immunity. That's the Johnson case, the Brewster case, the Gravel case. That fact is not in dispute, and so the bottom line is Mr. Ashafi should have been granted legislative immunity with respect to his comments at the city council meeting. The only argument to the contrary that is raised by Apelli is his contention that the comments were administrative in nature as opposed to legislative because they pertained to an employment decision. We disagree with that, obviously, because this was not an employment decision. He was not an employee of the city. He hadn't applied to be an employee of the city at that time, and city council under the charter has no authority whatsoever over hiring and firing of any employees of the city. That power relies directly with the mayor. And so our position is that he is entitled to legislative immunity from those comments at the city council meeting. Why don't you reiterate for us where you think the district court went wrong in its qualified immunity analysis? Where I think the district court went wrong in the qualified immunity analysis as it relates to the comments at the city council meeting is that there's essentially a spectrum of cases in the Sixth Circuit ranging from Block v. Rybar to Fritz to Barrett. And it is not clear, based on those cases, that the comments by Councilman Ashavi constitute sufficient adverse action to give rise to a First Amendment retaliation claim. Block v. Rybar sort of set the high watermark in terms of saying that this release of this highly sensitive personal information relating to a sexual assault by the prosecutor against the victim because they complained about the manner in which the prosecution was proceeding, that was sufficient in that case to rise to the level of an adverse action. The few cases that have come along since then, the Fritz case in particular, the defamation in that case, the alleged false statements were a zoning ordinance violation. And this court specifically had stated that those allegations of that violation standing alone were not sufficient to give rise to adverse action. Adverse action was only found because township officials contacted a third party, the plaintiff's employer, three different times, essentially threatening that employer that they would take action against the business and the standing in the community if the employer didn't rein in plaintiff's conduct. And plaintiff, after a third phone call, was ultimately terminated from their employment. It was the threats in that case, the repeated threats, and the subsequent termination that gave rise to the adverse action, but not the defamation. Here, there were no threats by Councilman Eshafi to anyone for anything. He simply made a comment during the meeting, directed to the public. It doesn't meet the Fritz standard. The district court felt that it did. He believed that it did. We obviously disagree with that because there just are no threats here. The fact that the comments may have incidentally affected some economic interest of the appellee is vastly different than having the power to take an action, calling someone and threatening to utilize that power to cause them to take an action against the plaintiff. The final case of- He's basically just saying this guy should not be rehired to the force, right? He is, and that's legitimate. The City Council has the power of the purse strings. They're the ones, in the first instance, who had to vote to settle Mr. Menge's first lawsuit against the city. They are primarily tasked with the due share obligation of managing the city's risk of liability. In his opinion, Mr. Menge posed a liability risk, and it's a valid position to believe that this person should not be brought back for one reason or another. Let's see if Judge Gilman has any questions. Your client, well, the city settled for, was it $560,000 for the first lawsuit? That is correct, Your Honor. He accused the plaintiff of stealing from the forfeiture fund, is that right? That is correct. Now, was that done during the City Council meeting, or was that a Facebook post? That was done specifically and only during the City Council meeting. Okay. But I think that, if I understand, you did not argue in the District Court that absolute legislative immunity applied, you were only going for qualified immunity, is that right? That is what the District Court read it as, and then, obviously, we did not cite the specific cases we're citing here today in the briefing. I thought it was argued at oral argument. Maybe I'm mistaken, but obviously, we are raising the issue here. Okay. How do you think, oh, I'm sorry, Judge Gilman. No, go right ahead. Go right ahead. Oh, well, thank you. How do you think, even if legislative immunity isn't before us straight up, does the fact that your client is a local legislator and the defamatory statement alleged happened on the floor during session, does that affect the qualified immunity analysis, in your view? How does the context of the statement affect whether this is a sufficiently adverse action? I think they operate somewhat independently of one another, to the extent that the statement was made during a City Council meeting from the floor from City Council, it's absolute legislative immunity for him to say so. To the extent that absolute legislative immunity doesn't apply based on the comment being made at City Council meeting, then the fact of the matter is he still made the comment in the capacity as a City Council member, and there is no case law that we have been able to locate that would tell every reasonable official that a City Council making this type of comment during a City Council meeting about someone saying they shouldn't be brought back is sufficient adverse action to qualify. And I think it's important to point out the Barrett case in that particular, and that case, there's the Rudd case that followed it, and then the Blackwell v. Chisholm case, that line of cases stands for the proposition that where a person makes a false allegation of stalking allegations of someone, knowing that they're false, in order to obtain a personal protective order against that individual. So in that situation, there's a false allegation of stalking, knowing that it's false, but then the additional adverse action of that information being used to obtain a personal protective order against somebody. That is also not this case. I guess, if I may, just in the time you have, I mean, it seems like you could say that the other cases aren't close enough in terms of the severity of an adverse impact, but I think, and maybe it's what Judge Hermendorfer was alluding to, another distinction would be just simply the legislative context, that, you know, there isn't, or you might argue there's not another case showing that a legislator can't say this in legislative session. I mean, have you made that argument? Do you understand what I'm saying? Yeah, I think we understand what you're saying, and yes, there is not another case that has found, to my knowledge, yes. I guess I'm wondering, have you made that argument, though, as opposed to an argument that's just about the putative severity of the impact of, you know, Mr. Shafi's statements? I think we have, to the extent that it's all factually specific. Block v. Rybar was a but there has not been a case dealing with the severity of this that was ever made by a mayor or a city council person during a city council meeting, and no case puts them on notice. There was the recent case of Whiting v. City of Athens, which I think came out about five days ago, and in that one there was the allegation that a mayor made defamatory comments during a city council meeting relating to a fireworks issue and some ongoing litigation against the individual, and the court did both, I think. It found that the allegations weren't sufficiently adverse, but it also specifically found that it was legislative immunity. Even if what the mayor had said was false, he was entitled to legislative immunity, and I see my time is up. Thank you. Judge Gilman, did you have anything else in this phase of the argument? I did not. All right. Thank you, sir. Thank you. We will hear from Mr. Cobb. Good morning. Good morning. Robin Kyle, I represent Brian Minge, the appellee in this case, and I hope that pleases the  Pleased to have you here, sir. Thank you. On the issue of summary judgment, I think the district court issued a very thorough and legally correct decision, and I'm asking you to affirm that decision. There are multiple issues of fact concerning whether or not the retaliation that was clear retaliation was because of Minge's First Amendment conduct. The filing of the previous lawsuit, the testifying before that, also dealing with municipal corruption, that's clearly First Amendment conduct. I don't think Brother Counsel is challenging that it was First Amendment conduct. I think his argument is essentially there was no retaliation, and if there was, it was I think he characterized it in his brief as de minimis. I mean, just to be candid about my concerns, I suppose, with your argument, I mean, it would seem quite strange that a legislator, so to speak, could be subject to liability for arguing that somebody should not be brought back to the police force, for example, because they had done inappropriate things with the city's monies. I mean, that would just seem to be kind of in the heartland of what we want city council people to be vigilant about, and so it would seem to go to qualified immunity. I mean, wouldn't the, doesn't the case law have to make clear to someone in Mr. Minge's position that you can't make this comment that otherwise you would think legislators would be making as fiduciaries, perhaps? Well, as the district court pointed out, that issue was decided by the 6th Court in Fritz, and it was decided by the Supreme Court in Garcetti. Okay. How is Fritz, in your view, factually similar to this case? Well, you have a retaliation by someone in a government position causing damage to someone with false statements. The false statements about Minge were insidious. I mean, as the district court pointed out, it basically accused him of being a criminal and stealing municipal funds. I mean, that's a slander campaign against someone he just doesn't like. Now, he testified in his deposition that he didn't know Mr. Minge, but in a motion in Lemonade that I bought, it's revealed that he has a hatred for white police officers. So in his testimony, he says, I'm just looking out for the city. That's not true. And it'll be up to a jury to decide whether he made his comments because of his general dislike of white police officers. To qualify for immunity, you've got to be engaged in something legislative, and certainly the Facebook and Concerned Citizens of Highland Park webpage, that's not a legislative session. He's not acting as a legislature then. He's just spreading lies about my client. He wasn't acting reasonably because this is a story he made up. And he said at the council meeting that he had been given information by the previous administration that Detective Minge had stolen municipal drug forfeiture funds. But when we took the deposition of the individual he referred to, which was the director of personnel, he says, I've never talked to the guy. I've never said anything to him. So this is a guy who's just making up lies, and he's told you himself why he made up the lies. He didn't want the guy coming back to work for the city of Highland Park. Now, whether that's because he's looking out for the city or just doesn't like white cops is certainly a factual question. The Supreme Court has held that defamatory statements, particularly those significant enough to cause a material worsening of a plaintiff's livelihood, constitute impermissible retaliatory conduct. We had an expert, and the judge has allowed him to testify, who's going to say that the online rehabilitation, which is kind of a niche area, there are not a lot of guys that do that yet, but that he would have to spend approximately $188,000 to rehabilitate his to Donald Trump or, you know, any one of the billionaires, but to a person who used to make $80,000 with overtime as a police officer, and he was going back to that, now only makes about $45,000. Counsel said in his brief that he took in $100,000, but that's a gross. If you look at his income tax returns, and those are in evidence, he paid himself $45,000 out of this special investigation firm that he started. Just going back to the Fritz case, you know, there the city official, I think it was, called third parties and kind of tried to pressure them, I think, to terminate the plaintiff or some kind of adverse action like that, and our court said that that was an adverse action. Our court did not say that the kind of critical remarks that this official made during the meeting were an adverse action, and so we don't have any threats to third parties here, and here what you are complaining about, it seems, is what he says in the meeting, which Fritz did not say is an adverse action for purposes of these claims. I just want to give you a chance to respond to that. Yeah, sure. There were comments to thousands of third parties. Right, but I mean, for purposes of, I guess just to be clear what I'm getting at, you know, where is a case that says this sort of defamatory interest is something that's off limits for a city council person or a legislative person? I think Garcetti says that.  Yeah. Okay. I read the language. The court was clear that defamatory statements, and this part is in quotes, particularly those significant enough to affect the material worsening of a plaintiff's livelihood constitutes, and then again in quotes, impermissible retaliatory conduct. But, I mean, again, is that in the context of a legislative meeting? I don't believe that was in the context. It was a government official. I'm not sure if it was a council person or a legislature as such. I have a question. Can you cite us a case where a city council person makes a statement at a city council meeting that gives rise to liability for some statement that you allege is defamatory? Can you cite me a case? I believe in the cases that I cited, and I don't recall the name off the top of my head, there was a council person that made disparaging comments about someone applying for a license or something. So I think there is case law on that. I can't give you a cite just looking at my notes. I couldn't find a case where someone during a council meeting said something that became the basis of liability. Well, I think the law is clear. You can't go on just a slander campaign against someone just because you're a city council person. That doesn't give you the right to just tell lies. Apparently, under the speech and debate clause of the federal constitution, if you're doing it in legislative session, you can. That's what community is all about. That is not a legislative act. Just going on a slander campaign against someone you don't like because of the color of their skin. Okay, that's impermissible. It's got to look like something that legislatures do, and that's not what legislatures customarily do. That's not part of a legislative process at all. It's a different situation if he says, I don't think he should be hired because he was not a good cop. Okay, that's a subjective determination, but saying he should not be rehired because he sued the city, that's retaliation for engaging in protected conduct, as I think the district court properly concluded. Okay, well, we understand that argument. Okay. We're going to have a tornado warning in four minutes, just to let you all know, so we might wrap it up before then. Okay, your court officer told us that. I guess the court understands where I'm coming from, whether you agree with it or not is another issue. But unless you have any other questions, I think that's all I have. All right, well, thank you, sir. Thank you. It pleases the court to have you here today. And it's a pleasure coming down. Thank you. Always is. All right, we'll hear rebuttal until the siren brings it to an end. Thank you. How about it? I mean, can somebody just get up there and slander and lie all they want and they get qualified immunity? Qualified or absolute legislative immunity? Either one. I mean, yeah, under the speech and debate clause, yes. I mean, it's... Well, what about QI? Under qualified immunity, again, it gets back to the fact that I've not been able to identify, and the Council has not identified any case in which a legislator has made comments, true, false, alleging criminal, non-criminal, what have you. No case that says that when you make statements during a city council meeting that you do not get qualified immunity by virtue of those statements. Nothing in... Well, let's say the plaintiff has evidence that it's just consciously, knowingly, just outright slander from the pulpit, so to speak, of the council meeting. I mean, is that something that a council person really needs a case to say you can't do? Just for malice, for malicious reasons. I think that the Barrett case certainly touches on the fact that the judge's comments alleging stalking were knowingly false because they read the statute and knew stalking didn't apply. But again, that was by a judge who made statements. This wasn't by a city council person during a legislative session. But also, this case is very different. It was stated that Mr. Shafi went on a slander campaign because he didn't like him in the color of his skin. Those aren't facts and evidence. The facts and evidence are Mr. Shafi doesn't know Mr. Mensch. The allegations regarding racial animus are not in the record in this case. You mean there's no evidence supporting them? Yeah, there's no evidence supporting those allegations. Mr. Shafi testified unrebuttedly, I don't know Mr. Mensch. I don't have a feeling about him one way or the other. The allegations of racial animus occurred over two years after these statements were made with respect to police officers other than Mr. Mensch. Those allegations form the basis of a separate lawsuit that's been filed against Mr. Shafi that's currently pending in the district court. But there is no evidence in this record that there's any animosity here whatsoever. We get that point. Judge Gilman, did you have any questions? I do not. All right. You can go ahead until it starts if you want. The last point that I would touch on again is the Facebook post. Again, as it pertains to we touch on the Linked v. Freed case, the fact that it's really private speech and it was his personal Facebook and there's no dispute that it was his personal Facebook. But even if it were to be state action, saying on Facebook that someone was fired as a legislator doesn't fall anywhere within the framework of Block, Rybar, Fritz, Baird. It doesn't rise to that level of adverse action. And so we are asking this court to reverse the decision of the district court and grant federal legislative immunity and qualified immunity from the First Amendment retaliation claim. Thank you. I just have one question. Do we have any jurisdiction over this Facebook issue? This is an interlocutory appeal on qualified immunity. Do we have jurisdiction to even consider the Facebook question, the issue arising from the Facebook post? What I would say is that the issues regarding the Facebook post were briefed by the parties on summary judgment. To be frank, I think maybe the district court regarded that as being a bit de minimis and it didn't really touch on that issue, but it was briefed by the parties and the same law applicable to qualified immunity would apply to the Facebook post as well. Okay. Well, we thank you both for your arguments. Case to be submitted.